Robert McFarland, Special Judge,
delivered the opinion of the Court.
*216 The complainants in this case, Margaret Helms and Rebecca Kidd, both femes covert, are the grand daughters of John Hillsman, who died intestate, in Knox County, about the month of December, 1850. Their father, John Lonas, and their mother, Evaline Lonas, who was the daughter of said John Hillsman, both died previous to the year 1850. Mrs. Helms and Mrs. Kidd, with their husbands, join in this bill against Gordon Mynatt, administrator of the estate, of John Hillsman, for an account of the personalty.
The other heirs and distributees are made parties, and a sale of the land and slaves, for partition and distribution, is prayed for. The administrator, and a part of the defendants, answer, and among other things, insist that the complainants are chargeable with a large amount of advancements made by the intestate, to their mother, in her lifetime, as well as advancements made to the complainants, since her death.
Under an interlocutory decree, an account was taken and filed. At the October Term, 1859, another account was ordered, but not taken until October, 1865. To the first report, exceptions were filed by the complainant; and to the last report, exceptions were filed by both parties. At the July Term, 1867, a decree was pronounced by the Chancellor, settling the principles, and recommitting the cause to the Master for a further account, in accordance with instructions embodied in the decree. From this decree, the defendants prayed and obtained an appeal to this Court, the Chancellor being of opinion, that it was a proper case for granting the appeal before taking the account. The appeal was only *217 prosecuted by two of tlie defendants. It appears that, after the appointment and qualification of the defendant, Mynatt, as administrator, he was proceeding to sell the personalty, and had also obtained an order from the County Court of Knox County, to sell the slaves; and one slave was actually sold to one of the heirs, Eich-ard Hillsman, and after deducting from the price, the amount of a note held by him against the intestate, the balance was charged to him as part of his distributive share. On the 25th of March, 1851, an agreement in writing, was entered into, signed by all the parties except Kidd and wife, which, in substance, provides, that, in lieu of the dower that had been assigned to the widow, and her year’s support, that had also been assigned, she was to have the use and possession of the home farm and slaves unsold, during her life or widowhood, she agreeing to pay a certain sum yearly towards the education of Joseph, the youngest son, to whom a large sum was due to make his share equal to the advancements made to .the others; and this agreement provides that the sale of the property shall proceed no further, but that it be left in the possession of said widow.
The report of the Master, made to the October Term, 1865, shows that the widow remained in possession of the land and received the rents, until her death, on the 28th of January, 1865; and that ¥m. Hillsman and S. H. Johnson were in possession from that time until the land was sold, by a decree in the cause.
The report also shows that the negroes remained *218 in the service of the widow, and were not sold or hired out, but were emancipated by the change in the constitution.
Upon this, the Chancellor was of opinion, that the complainants were not bound by the provisions of the agreement of the 25th of March, 1851. Mrs. Kidd did not execute the paper at all, and there was no privy examination of Mrs. Helms touching her execution of the agreement; and that, as the sale of the slaves was prevented by this agreement, the complainants are entitled to one tenth (there being ten shares) of the value of these slaves at the date of the agreement, which is declared to be a general charge upon the interests of all the other defendants in the estate; and the decree provides, that the Master shall report the amount due them upon this basis.
This, we think, is erroneous. The order obtained by the administrator from the County Court, for the sale of the slaves, is in the record. It was made upon an ex parte application, and is manifestly a nullity— the Court having no jurisdiction.
It was not the duty of the administrator to proceed with the sale of the slaves under this order. The sale, if made, would have been void as to minors, married women, and all parties not expressly assenting to it. The agreement of the parties that this sale should not proceed was superfluous, and it presented no obstacle in the way of complainants at any time filing their bill for a division or sale of the slaves; and this bill was actually filed for that purpose in April, 1856. The loss to the complainants of their *219 interest in these slaves, cannot in any legal sense, be attributed to tbe execution of this paper by the other parties. This agreement might be effective against those who executed it, so far as to release their interest in the hire of the slaves during the time the widow had them, but as to the interest of the others who did not execute the agreement, it would have no effect whatever, but leave them all the remedies they had before.
The Chancellor was also of opinion, that the complainants are entitled to their one tenth of the rents and profits of the land, during the time it was in possession of the widow, and this is declared to be a charge upon the shares of the defendants at large. This, it is argued, results from the agreement of the other heirs, that she should remain in possession during life or widowhood. This is also erroneous. Those of the heirs who might see proper to do so, could certainly agree that, so far as their interests were concerned, the widow should remain in possession of the land during life. This would not make them responsible to the other heirs who did not agree, for their shares of the rents. The agreement of part of the heirs, that the widow should remain in possession, would not preclude the right of the others to a partition at any time. The parties who did not agree to this arrangement, would have precisely the same rights they had before — neither more nor less. Whether the complainants would be entitled to a decree against the the widow, or her personal representatives for the rents, need not now be determined. No such relief was *220 asked for. In fact, the widow, Eebecca Hillsman, was not made a party to the bill, although the record shows that, on the 2nd of August, 1865, her death was suggested and admitted, and by consent of parties, the cause revived against Vm. Hillsman, her administrator.
The complainants also, in argument, insist that there are errors in the decree against them,, as to advancements. They did not, however, appeal from the decree, but seek to have it now reviewed in this Court, by a writ of error, which they have sued out. This writ of error must be dismissed. The decree of the Court below is not final; and although the Chancellor may, in his discretion, grant an appeal at this ' stage of the case, a writ of error does not lie, except from a final decree: Code, 3155, 3176. This decree is not final: See Delap et als. vs. Hunter et als.; 1 Sneed, 101.
The decree of the Chancellor will be reversed and modified as indicated above, and in other respects affirmed, and the cause remanded to be proceeded with. The costs of this Court will be divided.